By the Court.— Rapallo, J.
The proceedings were instituted in the supreme court under the act of 1858 (Laws of 1858, p. 574) for the purpose of vacating assessments upon the property of the respective petitioners for paving parts of Irving-place, Hineteenthstreet, and Seventeenth-street, with Hicolson pavement.
The resolutions of the "common council under which the several improvements in question were made, were all in the same form, and directed that the streets therein mentioned “be paved with Hicolson pavement where not already paved with Belgian pavement, and that cross-walks be laid or relaid at intersecting streets, under the direction of the Croton Aqueduct Department, and that an ordinance which followed each of the resolutions be adopted.” The ordinance provided that the work should be done by assessment.
*153 It appears from the proofs taken by the petitioners, and upon which the hearing was had at special term, that, in performing the work directed by these resolutions, stone cross-walks were not laid at all the intersecting streets embraced within the several areas directed to be paved, but only at those places where the intersecting streets were paved with Belgian or concrete pavement.
For instance : Irving-place, from Fourteenth to Twentieth-street, is intersected by five streets. Three of these were paved with Belgian or concrete, but at Sixteenth and Nineteenth-streets, which were directed to be paved with Nicolson pavement, there were no cross-walks laid, but the Nicolson pavement was continued over the space where there had previously been cross-walks. It was proved, on the part of the city, without contradiction, that it was injurious to the Nicolson pavement to interrupt it at intervals by crosswalks of stone, and that the contractor was directed to lay cross-walks parallel to the work, and transversely at the commencement and termination of the work, but at no other places.
The petitioners claim that under the resolution of the common council cross-walks should have been laid at all the intersecting streets, and that as much of the Nicolson pavement as covers the spaces where the cross-walks should have been laid, was unauthorized, and that the cost of such pavement being embraced in the assessment, vitiates the whole assessment.
The first three specifications of alleged irregularities set forth in the petition, consist of this objection, stated in different forms.
The court below seem to have supposed that the objection was that the expense of cross-walks was included in the assessment, though none were laid ; and the case was disposed of at general term on that ground. But such was not the objection, nor was *154 there any allegation or proof that any cross-walks were charged for which were not laid.
The objection made by the petitioners was to the charge for Mcolson pavement in those places where it was claimed that there should have been cross-walks.
We do not think that the terms of the resolutions of the common council are so specific in this respect as to require that cross-walks should be laid at every intersection, whether needed or not. The evidence shows that such cross-walks were rather injurious than beneficial at those points where the intersecting streets were laid with the Mcolson pavement, and that their cost was nearly three times as much per superficial yard as that of the pavement. Clearly, the petitioners have not been aggrieved or injured by the omission, and unless the language of the resolutions is so clear as not to admit of any other construction, we ought not to hold that the city was bound to incur this useless additional expense.
The language of the resolutions is that the street be paved, &c., and cross-walks laid and relaid at intersecting streets, under the direction of the Croton Aqueduct Department; the resolutions do not say in terms that they shall be laid at all the intersections, and, in view of the character of the pavement, as shown by the evidence, we think that the resolutions were substantially complied with by laying cross-walks at those intersections at which, in the judgment of the department, they were necessary or proper.
There is no proof that this was not done, and we think, therefore, that the objection presented by the first three specifications is untenable.
It is further objected, however, that, although cross-walks as well as pavement were required by the resolutions, and some were contracted for and laid, and new bridge-stones furnished, and charged for, to amounts exceeding two hundred and fifty dollars in *155 each case, there was no advertisement for sealed proposals for such cross-walks or bridge-stones, as required by section 38 of the charter of 1857.
This objection is presented by specifications 5 and 6 of the petitioners.
The advertisement published and read in evidence, called for sealed proposals for the construction of Nicolson pavements in the localities described in the resolutions, and stated that the plans for the works might be seen and specifications and forms for the bids obtained on application at the office of the Croton Aqueduct Board.
The advertisement did not mention cross-walks, or bridge-stones, and it is urged that it did not give notice that such bridge-stones or cross-walks were required. That although they were mentioned in the specifications in the office of the Croton board, to which attention was invited, yet that there was nothing in the advertisement to indicate that cross-walks would be embraced in the specifications or to induce parties to examine them with the view of bidding for such crosswalks. It might, perhaps, be an answer to this objection that contractors acquainted with the business of laying pavements would know that cross-walks at some points would be a necessary part of the work, and, therefore, that the advertisement for pavement embraced cross-walks as incidental thereto. But in this case, there is an element which presents a more serious difficulty. It appears that the Nicolson pavement is a patented article which could be furnished by only one party, and that there was necessarily but one bidder for the contract. The objection taken in the respondent’s points that inasmuch as there can be no competition in such patented articles, the city has no right, under the charter, to contract for them, is not taken in these objections, and is not properly before us; but the objections which are taken in the petitions to *156 the want of a sufficient advertisement for proposals for the cross-walks or bridge-stones ordered by the resolutions, does raise the question whether, when an improvement is ordered by the common council which embraces several kinds of work capable of being separately performed by different parties, some of which works are patented and others not patented, separate proposals should not be invited for that part of the work which is not patented and for which there can be competion.
It seems to us that the intent of section 38 of the charter cannot be carried into effect without such a separation.
Even if we shall hold that patented articles may be contracted for by the city, notwithstanding the impossibility of competition, we ought to stop there and not go to the length of sanctioning a practice whereby competition may be prevented by unnecessarily coupling a work not patented with one which is patented, and advertising for an entire proposal for the whole. In the former case, there is no alternative between incurring the. hazard of the abuses which may result from the absence of competition, and absolutely depriving the public of the benefit of useful improvements and inventions. But in the latter case, competition is unnecessarily excluded as to a portion of the work, and as to that portion, the spirit of section 38 is completely evaded.
We are, therefore, of opinion that a fair and substantial compliance with that section requires that when the work is separable, separate proposals should be invited by advertisement for that portion which is not the subject of a patent, so that persons other than those controlling the patent may be bidders.
In this respect, the advertisement in the present case was defective. Even if the term pavement be sufficient to embrace the appropriate cross-walks, yet *157 the advertisement did not authorize any separate proposals for the cross-walks, and no persons but those who had it in their power to propose for the pavement could be bidders for the cross-walks. By this mode of advertisement, the patentees of the pavement were secured against competition for the cross-walks or bridge-stones, as well as for the patented pavement, and were enabled, had they chosen to do so, to charge any price, however exorbitant, for articles which under a different mode of advertising would have been open, to competition.
■ It does not appear that in this case the contractors availed themselves of the opportunity thus afforded of taking an undue advantage; but a system which would open to unscrupulous parties such an avenue to fraud should not be sanctioned, and is diametrically opposed to the spirit of section 38 of the charter.
Our conclusion is, that there was no regular or sufficient advertisement for proposals for the cross-walks and bridge-stones, and that this irregularity invalidated the assessment.
The fourth specification of the petitioners relates to a per diem allowance made to the contractors pursuant to one of the provisions of the contract, for completing the work in a shorter time than that limited by the contract.
Section 38 of the charter of 1857 provides, that when proposals are advertised for, the terms of the contract shall be settled by the corporation counsel, as an act of preliminary specification to the bid or proposal.
Contracts containing specifications were prepared in accordance with that provision, and an examination of them invited by the advertisement, as has already been shown.
The bids were therefore made with reference to this *158 provision of the contract, and it was proved upon the hearing, that snch is the usual practice.
Thus, the time for completion of the work is an essential part of the bid, and thus when bids are equal in other respects, the party offering to do the work in the shortest time, is treated as the lowest bidder.
The daily allowance under each contract for time saved, is precisely equal to the daily expense of inspecting the work, and the same sum which the city, pays to the contractor for shortening the time, it saves in inspectors’ fees:
By another stipulation of the same contract, if the prescribed time is exceeded by the contractor, he is bound to pay the inspectors’ wages during the excessive time. The time, therefore, within which the work is to be completed, affects its price, and within the bounds fixed by this contract, I can see no objections in ordinary cases, to graduating the price to be paid according to the time allowed for performing the work.
This provision for allowance, it is true, might, in the cáse of a patented article, be used as an instrument of fraud ; but that result flows'from the inherent difficulties of applying the competitive system to such cases, and not from the method of adjusting the price.
The danger lies in the impossibility of competition, and not in the form of the contract. If we hold that the city may contract for such articles, I do not see that any additional hazard is incurred by allowing the price to be graduated according to time, as in other cases.
It is just as easy for bidders disposed to take undue advantage, to add to the price demanded as to the number of days required for performance.
The seventh specification related to the charge of commissions at the rate of two and a half per cent, up *159 on the whole amount payable into the bureau of assessments.
This results in a charge of two and a half per cent, upon the amount expended upon the work, and also of two and a half per cent, upon the' commission chargeable upon that sum, and, at first sight, the charge would seem to be excessive. But on an examination of the statute, I am inclined to the opinion that it is justified. The act contemplates that where work is done by assessment, the whole expenses shall be borne by the property owners, and no part of it by the city. To accomplish this result, the whole of the commission payable to collectors should be included in the assessment.
The commission allowed by the statute for collection, is two and a half per cent, on all items of assessments collected by the bureau. The collectors are not allowed by the statute (see Haffm. L., 240) to retain their commissions and pay the balance into the bureau, but must pay into the bureau the whole - amount collected., and on the amounts so paid in, commissions are to be computed and paid monthly by the comptroller on the requisition of the street commissioner.
Under this system, if the two and a half per cent, were computed only on the cost of the work, the city would inevitably be the loser to some extent. For instance,—a piece ^f work costs four thousand dollars : a commission of two and a half per cent, added to that would make the whole amount to be assessed, four thousand one hundred dollars. The collector collects and pays into the bureau four thousand one hundred dollars. He is then entitled by law to draw out two and a half per cent, on the four thousand one hundred dollars paid in, which commission would be, not one hundred dollars, but one hundred and two dollars and fifty cents. The two dollars and fifty cents would thus be lost by the city. This result can only be avoided *160 by the system which was pursued in these cases, of including in the assessment the whole amount of commissions which the collectors would be atithorized to draw.
The eighth and last specification is, that the principle upon which the assessment was apportioned is erroneous, it not being imposed upon the several lots in proportion to the advantage which each derived from the pavement, but in proportion to the frontage. We do not think that this is a subject which could be inquired into in this form of proceeding. If an error has been committed in not making an equitable apportionment of the sum assessed among the several property owners, it is an error of judgment on the part of the commissioners, and not a fraud or irregularity in the proceedings.
The act of 1858 can only be resorted to for the purpose of reviewing such frauds or irregularities.
The petitioners have-taken the point that the assessment was not confirmed by the common council, and that the act of 1861, which purports to dispense with such confirmation, is unconstitutional, by reason of not being properly entitled.
We cannot inquire into this objection, for the reason that it is not stated in the petition, and, consequently, was not passed upon by the court below.
It is claimed on the part of the city that though there be an irregularity in the assessments, the order setting them aside should be reversed, and a deduction ordered of the sums erroneously included in the assessment, pursuant to the provisions of the act of April 36, 1870, § 37 {Laws of 1870, p. 903).
That act provides that if, upon the hearing of proceedings brought pursuant to the act of 1858, it shall appear that, by means of an irregularity, the expense of a local improvement has been unlawfully increased, the judge may order the assessment upon the lands of *161 the aggrieved party to be modified, by deducting from the assessment thereon the proper proportion of the excessive expenditure.
The court below held that this act could not operate-in the present proceedings, the hearing thereon having been had before the passage of the act, and the act not being retroactive.
We are of the same opinion.
The orders appealed from should be affirmed, with costs.